# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JORGE FLORES,

      Plaintiff,

v.                                                           No. CV 19-331 CG

ANDREW SAUL,
Commissioner of the
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Jorge Flores' *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 17), filed September 3, 2019; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 26), filed November 26, 2019; and Mr. Flores' *Reply in Support of Plaintiff's Motion to Reverse and Remand for a Rehearing*, (the "Reply"), (Doc. 27), filed December 19, 2019.

Mr. Flores filed an application for disability insurance benefits on July 29, 2015, alleging disability beginning September 1, 2013. (Administrative Record "AR" 79, 185). In his application, Mr. Flores claimed he was limited in his ability to work due to diabetes, high blood pressure, cholesterol, feet and eye issues, and depression. (AR 202). Mr. Flores' application was denied initially on December 7, 2015, and upon reconsideration on June 8, 2016. (AR 96, 104). Shortly thereafter, Mr. Flores requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 23, 2018, before ALJ Michael Leppala. (AR 37, 107).

At the hearing, Mr. Flores appeared before the ALJ with his attorney Laura Johnson, non-partial Vocational Expert ("VE") Sandra Trost, and Spanish Interpreter Alma Ramirez. (AR 37). The ALJ issued his decision on April 24, 2018, finding Mr. Flores not disabled at any time between his alleged onset date through the date he was last insured. (AR 25). Mr. Flores submitted a request for review by the Appeals Council, which was denied, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. (AR 1).

Mr. Flores, represented by his attorney Laura Johnson, argues in his Motion that the ALJ made three reversible errors in rejecting his disability claim: (1) he erred by failing to either account for in his RFC or explain why he rejected limitations provided by State Agency psychologist Morgan Kyle, Psy.D.; (2) he improperly rejected the opinion of psychological consultative examiner Eligio R. Padilla, Ph.D.; (3) and the residual functional capacity ("RFC") was not based on substantial evidence. (Doc. 17 at 2). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ erred in failing to adequately account for or explain why he rejected Dr. Kyle's limitations, the Court finds that Mr. Flores' Motion should be **GRANTED**.

I. **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal

standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2018), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (alteration made).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c (a)(3)(A) (2018); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

1. 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background

In his application for disability benefits, Mr. Flores alleged he was limited in his ability to work due to diabetes, high blood pressure, cholesterol, feet and eye issues, and depression. (AR 202). At step one, the ALJ determined that Mr. Flores had not engaged in substantial gainful activity from September 1, 2013, the alleged disability onset date, through December 31, 2017, his date last insured. (AR 17). At step two, the ALJ found that Mr. Flores had the severe impairment of affective disorder. (AR 17). At step three, the ALJ determined that Mr. Flores' impairment did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526 (2017). (AR 19).

The ALJ then found that Mr. Flores had the RFC to perform "a full range of work at all exertional levels" with the following non-exertional limitations: he could understand, remember, and carry out simple and some complex instructions and could make commensurate work-related decisions; he was limited to occasional, superficial interaction with coworkers, supervisors, and the general public, but could respond appropriately to supervisors and coworkers, and to work situations; he could deal with routine changes in the work setting; and he could maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. (AR 20-21).

In formulating Mr. Flores' RFC, the ALJ stated that he considered Mr. Flores' symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical and other evidence, as required by 20 C.F.R. § 404.1529 (2017) and Social Security Ruling ("SSR") 16-3p. (AR 21). In addition, the ALJ stated that he considered opinion evidence consistent with the requirements of 20 C.F.R.

5

§ 404.1527 (2017). (AR 21). The ALJ concluded that some of Mr. Flores' impairments could be expected to cause his alleged symptoms, but he found that the intensity, persistence, and limiting effects Mr. Flores described were not entirely consistent with the evidence in the record. (AR 21).

As for the opinion evidence, the ALJ stated that he gave "little weight" to the opinions of Dr. Padilla and Mr. Flores' primary care provider Caline Cone, M.D. (AR 22-23). The ALJ stated their opinions were inconsistent with findings from Dr. Padilla's examination, Mr. Flores' treatment history, and Dr. Cone's treatment notes. (AR 22-23). Next, the ALJ gave "great weight" to the opinions of State Agency psychological consultants Dr. Kyle, and Lisa Swisher, Ph.D., because their opinions were consistent with Mr. Flores' good response to medications and "overall normal" mental findings. (AR 23). However, the ALJ gave "slightly greater weight" to Dr. Swisher's opinion that Mr. Flores was able to perform some complex tasks, because her opinion was consistent with Mr. Flores' normal cognition and "evidence that his depressive symptoms improve[d] with medication." (AR 23) (alteration made). Lastly, the ALJ considered the Third-Party Function Report submitted by Mr. Flores' son, Mario Flores. (AR 23). The ALJ explained that he gave "little weight" to the statements made by Mario Flores, because they were inconsistent with evidence in the record. (AR 23).

At step four, the ALJ found that Mr. Flores was unable to perform his past relevant work as a baker or a baker of pastries. (AR 24). At step 5, the ALJ determined that Mr. Flores has a limited education and could communicate in English. (AR 24). Relying on VE testimony, the ALJ found that considering Mr. Flores' age, education, work experience and assessed RFC, he could perform other work as a floor waxer and kitchen

helper. (AR 24-25). After finding that Mr. Flores was able to perform other work existing in significant numbers in the national economy, the ALJ concluded he was "not disabled," as defined by 20 C.F.R. § 404.1520(g), and ended his analysis at step five. (AR 25). Mr. Flores requested review of the decision by the Appeals Council. (AR 181). The Appeals Council affirmed the ALJ's denial of Mr. Flores' claim for disability benefits. (AR 1-3).

## IV. Analysis

Mr. Flores presents three arguments in his Motion before the Court. (Doc. 17). First, he argues the ALJ erred in giving great weight to Dr. Kyle's opinion and then failing to account for all of Dr. Kyle's moderate limitations and narrative opinions, and he failed to explain why some limitations were omitted. *Id.* at 12-14. Second, Mr. Flores argues the ALJ erred by improperly rejecting Dr. Padilla's opinion. *Id.* at 14. Finally, Mr. Flores contends the ALJ's RFC assessment is not based on substantial evidence. *Id.* at 17-18.

In response, the Commissioner asserts the RFC does account for all of Dr. Kyle's moderate limitations and narrative opinions, and therefore, there are no consistencies between the RFC and Dr. Kyle's assessment. (Doc. 26 at 12-15). Next, the Commissioner claims the ALJ reasonably discounted Dr. Padilla's opinion and provided adequate and lawful reasons for discounting his opinion. *Id.* at 15-18. Finally, the Commissioner argues the RFC is supported by substantial evidence because the ALJ reasonably and permissibly relied on Dr. Swisher's opinion, and the ALJ properly accounted for Mr. Flores' subjective complaints. *Id.* at 18-23.

### A. The ALJ's Consideration of Dr. Kyle's Opinion

Mr. Flores first argues the ALJ committed a fatal error by giving great weight to Dr. Kyle's opinion but then failing to include restrictions in the RFC that accounted for all of

the moderate limitations in Dr. Kyle's Section I assessment and Section III narrative RFC opinion, with no explanation provided for the omissions. (Doc. 17 at 11-14).[2] Importantly, the Section I assessment, within the Mental Residual Functional Capacity Assessment, is a list of four to seven pre-determined abilities related to a particular domain of mental functioning, such as adaption or concentration and persistence. (AR 74-76). Conversely, the Section III assessment provides a narrative portion in which the State Agency doctor can provide specific RFC restrictions. (AR 74-76).

Mr. Flores argues that the following Section I moderate limitations were not accounted for in the RFC: the ability to maintain concentration and persistence for extended periods; the ability to complete a normal workday and workweek without psychological interruptions; and the ability to respond to changes in the work setting. (Doc. 17 at 13). Additionally, Mr. Flores highlights that in his Section III narrative portions, Dr. Kyle wrote that Mr. Flores' "attention and concentration will be variable" and this would "result in [] d/c [decreased] [] CPP [concentration, persistence and pace] and [the] ability to carry out detailed tasks." (AR 75). Dr. Kyle went on to opine that Mr. Flores was "intact for simple two step tasks and had sufficient attention and concentration to carry out such tasks." (AR 75). In Section IIII under the adaption domain, Dr. Kyle wrote that Mr. Flores would "require additional time and support to adapt to changes in the work setting." (AR 76).

In his Response, the Commissioner contends that an ALJ is not required to adopt

---

2. The current forms used by Social Security no longer specifically label these portions Section I and Section III, respectively. (AR 74-76). However, the labels have continued as they have been incorporated into Social Security's current disability processing program and continue to be used for purposes of litigation. *See Silva v. Colvin*, 203 F. Supp. 3d 1153, 1164, n.5 (D.N.M. 2016).

specific limitations from a doctor's opinion, and furthermore, the RFC's limitations were consistent with Dr. Kyle's limitations. (Doc. 26 at 13-14) (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c) (2012)). The Commissioner cites to *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012), which provides there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Rather, according to the Commissioner, the ALJ's RFC must consider and address all medical opinions, and if the RFC conflicts with a medical source opinion, then the ALJ must explain why the opinion was not adopted. (Doc. 26 at 14) (citing SSR 96-8p, 1996 WL 374184, at 7*).

With regard to Dr. Kyle's moderate limitation in completing a normal workday and work week, the Commissioner puts forth three restrictions in the RFC that account for this portion of Dr. Kyle's opinion: the restriction on maintaining concentration, persistence and pace for up to two hours at a time with normal breaks, the restriction on routine changes in the work setting, and the restriction to occasional and superficial interactions. (Doc. 26 at 14). Next, the Commissioner contends that Dr. Kyle's moderate limitation on the ability to respond appropriately to changes in the work setting, and his narrative statement that Mr. Flores would require additional time and support to adapt to changes, is accounted for with the restriction to routine changes in the work setting. *Id.* at 14-15.

In Mr. Flores' Reply, he rejects the Commissioner's contention that the RFC restrictions account for both Dr. Kyle's Section I findings and Section III narrative assessment. (Doc. 27 at 2). Specifically, with respect to the ALJ's limitation on routine changes in the work setting, Mr. Flores asserts that this restriction is "confusing [] because routine changes indicates a routinely changing environment." (Doc. 27 at 4)

9

(alteration made). Rather, pursuant to Social Security's Program Operations Manual System ("POMS"), the mental demands of unskilled work are defined as the "'ability to deal with changes in a *routine work setting*,' not *routine changes*." *Id.* at 4 (quoting POMS DI 25020.010(A)(3)) (emphasis in original). Thus, Mr. Flores argues, the ALJ's restriction to "routine changes" does not "contemplate any additional time or support needed when adjusting to change, as opined…by Dr. Kyle." *Id.* at 4. Lastly, Mr. Flores highlights the Commissioner's footnote in which he points out Dr. Swisher's differing opinion on the ability to adapt. *Id.* Mr. Flores contends this is an unjustified *post hoc* rationalization, because the ALJ did not discuss or explain Dr. Kyle's and Dr. Swisher's differing opinions on the issue. *Id.*

Although it is not required that an ALJ discuss every piece of evidence, he is required to discuss, at a minimum, the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). In doing so, "if the RFC assessment conflicts with the opinion, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (alteration made). Of course, it is not necessary for an ALJ to delineate the direct correspondence between a RFC finding and a specific medical opinion. *Chapo*, 682 F.3d at 1288. However, an ALJ cannot "pick and choose" through a medical opinion, taking only the parts that are favorable to a finding of nondisability. *See id.* at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).

Whether an ALJ can ignore Section I limitations in his RFC is fraught with conflicting interpretations. The split centers around the interpretation and effect of *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016). *Compare Silva*, 203 F.Supp.3d at 1163 n.4

(finding *Smith* still requires that ALJs address moderate limitations in Section I findings but in some cases can do so with a limitation to unskilled work), *with Rush v. Saul*, 389 F. Supp. 3d 957, 969 (D.N.M. 2019) (finding *Smith* holds that a State Agency doctor does not need to ensure consistency between Section III and Section I findings, and therefore an ALJ is permitted to rely on a State Agency doctor's ultimate opinion as expressed solely in the Section III RFC narrative).

Without wading into the differing interpretations of *Smith*, the Court finds that where great weight is given to a State Agency doctor, and no further explanation as to differences between the RFC and opinion is provided, the decision's RFC must be consistent with the doctor's Section III narrative RFC assessment. *See Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013) (stating that "it is in Section III that the actual mental RFC assessment is recorded") (quoting POMS DI 24510.060) (internal quotation marks and internal alterations omitted); *Rush*, 389 F.Supp.3d at 969 ("*Smith* mandates affirmance here because the doctor's narrative RFC and the ALJ's RFC are consistent."); *Silva*, 203 F.Supp.3d at 1161, 1164 ("Other than for the ultimate conclusion of disability," the regulations do not permit "for any portion of the doctor's MRFCA form" to be ignored by an ALJ in his assessment of an opinion). Indeed, even in *Smith* the 10th Circuit noted that the ALJ's RFC was consistent with the State Agency doctor's Section III RFC assessment. *Smith*, 821 F.3d at 1268-1269 (finding that the ALJ "arrived at a similar assessment" as the State Agency doctor's RFC narrative assessment).

In this case, the ALJ's RFC is inconsistent with Dr. Kyle's narrative assessment with respect to Mr. Flores' ability to adapt to changes in the work setting. In the narrative RFC portion, Dr. Kyle opined that Mr. Flores would "require additional time and support to

11

adapt to changes in the work setting." (AR 76). In contrast, the RFC restricted Mr. Flores to "routine changes in the work setting." (AR 21). As pointed out by Mr. Flores in his Reply, such a limitation suggests that Mr. Flores is able to adjust to changes that routinely occur in the work setting. *See* (Doc. 27 at 4). While the phrase "routine changes" could also be understood to suggest that the type of change is routine, as in commonplace or rote, even such an interpretation implies there is no restriction on the frequency of the changes nor does it provide any meaningful restriction on the ability to cope with work setting changes. Furthermore, under this interpretation, it still suggests that frequent changes occur, though the nature of those changes are routine.

Under either interpretation, the Court finds that such a restriction is clearly inconsistent with Dr. Kyle's Section III narrative assessment that Mr. Flores would require "additional time and support to adapt to changes in the work setting." (AR 76). While there is "no requirement in the regulations for a *direct* correspondence between an RFC finding and a specific medical opinion" in this case the Court cannot see *any* correspondence between Dr. Kyle's opinion and the RFC's limitation to "routine changes in the work setting." (AR 21); *Chapo,* 682 F.3d at 1288 (emphasis added).

Furthermore, the ALJ failed to explain why this portion of Dr. Kyle's opinion was not adopted. *See* SSR 96-8p, 1996 WL 374184, at *7 ("[I]f the RFC assessment conflicts with the opinion, the [ALJ] must explain why the opinion was not adopted."). Additionally, the Commissioner provides no argument as to whether Dr. Kyle's RFC restriction is accounted for by any other limitations in the RFC. (Doc. 26 at 12-15). Moreover, while the Commissioner does not explicitly argue that Dr. Swisher's opinion was given greater weight on this issue, as she opined that Mr. Flores had no limitations in his ability to

12

adapt to changes in a work setting, such an argument would constitute a *post-hoc* rationalization. As mentioned previously, the ALJ made no mention of these inconsistencies when discussing Dr. Swisher's and Dr. Kyle's opinion, (AR 23), and the Court may not make a *post hoc* effort to "salvage [an] ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted). Therefore, judicial review remains limited to the reasons provided in the ALJ's decision. *Id.* In summary, the ALJ's failure to adequately account for or explain why he rejected Dr. Kyle's Section III narrative opinion that Mr. Flores' would require additional time and support to adapt to changes constitutes a harmful and reversible error.

### V. Conclusion

For the foregoing reasons, the Court finds that the ALJ committed a harmful error when he failed to either explain or properly incorporate Dr. Kyle's RFC narrative restrictions on Mr. Flores' ability to adapt to changes in a work setting. Because the Court finds this is a harmful error, the Court will not address Mr. Flores' remaining arguments.

**IT IS THEREFORE ORDERED** that Mr. Flores' *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 17), is **GRANTED** and this case is to be **REMANDED** for additional proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE